**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

IN RE:                                                    CASE NO.: 20-22971-MAM
                                                          CHAPTER 11
TENTLOGIX, INC.

      Debtor.

_____/

# FOURTH AMENDED PLAN OF REORGANIZATION
## FOR TENTLOGIX, INC.

**KELLEY, FULTON & KAPLAN, P.L.**
Attorneys for Debtor in Possession
1665 Palm Beach Lakes Blvd.
The Forum - Suite 1000
West Palm Beach, Florida 33401
Telephone:  (561) 491-1200
Facsimile:   (561) 684-3773

By:___/s/ Craig I. Kelley_____
        Craig I. Kelley, Esquire
        Florida Bar No.: 782203

## TABLE OF CONTENTS

ARTICLE I – DEFINITIONS ................................................................................................ 3

ARTICLE II - PROVISIONS FOR ADMINISTRATIVE CLAIMS & FEES.............................. 6

ARTICLE III - CLASSIFICATION OF OTHER CREDITOR'S CLAIMS AND TREATMENT
    OF CLASSES OF CREDITORS AND CLAIMS UNDER THE PLAN .......................... 7

ARTICLE IV – IMPAIRMENT .......................................................................................... 11

ARTICLE V - EXECUTION OF THE PLAN ...................................................................... 11

ARTICLE VI - POST-CONFIRMATION REORGANIZED ................................................. 12

DEBTOR'S STRUCTURE................................................................................................. 12

ARTICLE VII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES......................... 12

ARTICLE VIII - MODIFICATION OF THE PLAN ............................................................ 12

ARTICLE IX - CONFIRMATION REQUEST .................................................................... 13

ARTICLE X - EFFECT OF CONFIRMATION .................................................................. 14

ARTICLE XI - RETENTION OF JURISDICTION ............................................................. 14

ARTICLE XII- MISCELLANEOUS .................................................................................. 15

**TENTLOGIX, INC.,** Debtor in Possession, hereby proposes the following Amended Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code.

### ARTICLE I – DEFINITIONS

For purposes of this Plan of Reorganization, and as may be amended, (hereinafter referred to as the "Plan") and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and any term in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code. The following terms when used in this Plan shall, unless the context otherwise requires, have the following meanings:

1.1     "Administrative Claim" means a claim allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

1.2     "Allowed Claim" means (1) any claim listed in the Debtor's Schedules as filed in connection with its Bankruptcy and not scheduled as unliquidated, contingent or disputed, and/or (2) any claim against the Debtor, a Proof of which was timely filed on or before the bar date established by Order of the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c) for claims against the Debtor's estate, against which filed claim no objection to the allowance thereof has been interposed, or as to any such objection there has been a final order entered and/or (3) any claim against the Debtor which is reduced to writing and is consented to by the Debtor and liquidated in an amount, which writing has been approved by a final Order.

1.3     "Allowed Priority Claim" means that portion of an Allowed Claim entitled to priority under Section 507(a)(3), (4) (6) and (8) of the Bankruptcy Code.

1.4     "Allowed Secured Claim" means an Allowed Claim of a creditor secured by a "Lien", as that term is defined in Section 101(37) of the Bankruptcy Code against any "property" of the

3

Debtor's estate, but only to the extent of the "value", as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such creditors interest in such estate's interest in such property, but excluding claims under Section 506(b). In accordance with the definition set forth in Section 506(a) of the Bankruptcy Code, an "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a creditor having a Lien against any property of the Debtor's estate to the extent that the value of such creditors interest is less than the amount of such allowed claim. Only liens on property of the estate of the Debtor or on the proceeds thereof which are valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non-Bankruptcy Law shall be an Allowed Secured Claim.

1.5     "Allowed Tax Claim" means any Allowed Claim of a taxing authority entitled to priority treatment under Section 507(a)(8) of the Bankruptcy Code.

1.6     "Allowed Unsecured Claim" means any Allowed Claim which is not an Administrative Claim, an Allowed Priority Claim, or an Allowed Secured Claim.

1.7     "Claimant" means the holder of a claim.

1.8     "Continuing Operations" means the ongoing business operation and such other businesses in which the reorganized Debtor may engage from time to time.

1.9     "Debtor" means **TENTLOGIX, INC.**

1.10     "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules filed in connection with this Bankruptcy Case, or any Claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no final Order has been entered.

1.11     "Effective Date" means thirty (30) days after the entry of the Order of Confirmation

at which time the initial payments called for herein will commence, unless stated otherwise in the Plan.

1.12 "Final Order" means an Order or Judgment entered by the Bankruptcy Court, or another Court of competent jurisdiction, in connection with the Debtor's reorganization case, which has not been reversed, stayed, modified, or amended and as to which the time to appeal or to seek certiorari, review or rehearing has expired, as to which no petition for certiorari, review or rehearing is pending or as to which any right to appeal or to seek certiorari, review or rehearing has been waived in writing in a manner satisfactory to the Debtor.

1.13 "Leases" means those certain Leases that are property of the Estate under which machinery, equipment or real property are leased to the Debtor or by the Debtor, as may be applicable.

1.14 "Plan" means this Plan of Reorganization, including any amendments or modifications thereto.

1.15 "Priority Claim" means a claim which qualifies for priority treatment under Section 507(a)(3), (4) or (6) of the Bankruptcy Code, other than Administrative Claims and Tax Claims.

1.16 "Pro Rata" means in the same proportion as each creditor's Allowed Claim bears to the total claims of the class; i.e., a creditor's pro rata distribution shall be a percentage of the total funds available for distribution which is equal to the amount of the creditor's claim, divided by the sum of (a) the total amount of all Allowed Claims and (b) the amount of all Disputed Claims.

1.17 "Record Date" means (a) for the purpose of voting on the Plan, the date of entry of an Order approving the Disclosure Statement with respect to the Plan, and, (b) for the purpose of any distribution to holders of allowed interest under the Plan, the Confirmation Date.

1.18 "Secured Creditor" means the holder of an allowed Secured Claim.

1.19    "Tax Claim" means a claim filed by a Taxing Authority alleging priority status under Section 507(a)(8) of the Bankruptcy Code.

1.20    "Unsecured Creditor" means the holder of an Allowed Unsecured Claim, other than an Administrative Claim, Priority Claim, Secured Claim or Tax Claim.

1.21    "Confirmation Date" means the date in which the Confirmation Order is entered on the Docket by the Bankruptcy Clerk.

1.22    "Confirmation Order" means an Order of the Bankruptcy Court confirming the provisions of the Plan of Reorganization, and any amendments or modifications thereto, pursuant to 11 U.S.C. Section 1129 of the Bankruptcy Code.

## ARTICLE II - PROVISIONS FOR ADMINISTRATIVE CLAIMS & FEES

2.1    <u>Administrative Claims</u>

The administrative claimants include the Debtor's attorney and the Office of the U.S. Trustee. Payment of the administrative claims for the Debtor's counsel is subject to set off for pre- and post-petition retainers, as well as approval by the Court of very detailed fee applications. The scheduling Order for Confirmation will set forth a deadline for the filing of all administrative claims, which will be paid on or before confirmation. All allowed Administrative Claims of the type specified in 11 U.S.C. Section 507(a)(1) shall be paid only upon approval of this Court after proper Applications are filed and an Order of this Court is entered.  There shall be sufficient funds to pay all such claims in the trust account of Debtor's counsel at least seven (7) days before the confirmation hearing. The foregoing is a condition precedent to the confirmation of the Plan.  It is anticipated that total fees for counsel to the Debtor will be approximately $115,000.00 through closure of this case. It is anticipated that the accountant fees will be approximately $50,000.00.

2.2    All Fees Due Under Section 1129(a)(12) of the Bankruptcy Code shall be paid as

6

required by 28 U.S.C. Section 1930, or as ordered by the Court at confirmation.

## ARTICLE III - CLASSIFICATION OF OTHER CREDITOR'S CLAIMS AND TREATMENT OF CLASSES OF CREDITORS AND CLAIMS UNDER THE PLAN

3.1     An Allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that class and, is in a different class to the extent that the remainder of the Claim qualifies within the description of a different class.

3.2     All payments under this Plan shall commence on the Effective Date of the Plan, unless indicated otherwise.

3.3     The remaining Creditors and Allowed Claims are divided into the following classes, which classes shall be mutually exclusive, and satisfied in full as follows:

1.      **Class One (State of Florida Department of Revenue)**: The State of Florida Department of Revenue's secured claim (Claim #13) in the amount of $18,148.88 shall be paid over a period ending not later than five (5) years after the date of the order for relief (which is 45 months after the projected Effective Date) in an amount of $445.19 per month in conformance with 11 U.S.C. 1129(a)(9)(c).The State of Florida Department of Revenue filed a Proof of Claim in this matter. This claim is unimpaired.

2.      **Class Two (Internal Revenue Service Priority Claim)**:   The Internal Revenue Service's Priority claim (Claim #16) initially filed on January 19, 2021 in the amount of $251,098.01 was amended on December 30, 2021 to $0.00.  The general unsecured claim shall be paid in Class Twelve.   This claim is unimpaired.

3.      **Class Three (St. Lucie County Tax Collector Secured Claim)**: The St. Lucie County Tax Collector (Claim #20) in the amount of $14,098.06 shall be paid over a period ending not later than five (5) years after the date of the order for relief (which is 45 months after the

projected Effective Date) in an amount of $498.73 per month in conformance with 11 U.S.C. 1129(a)(9)(c) at the statutory 18% interest.   This claim is unimpaired.

4.    **Class Four (Martin County Tax Collector Secured Claim):** The Martin County Tax Collector (Claim #28) in the amount of $156,813.24 shall be paid in equal monthly installments beginning on the effective date of the Plan at the statutory 18% interest.  A portion of the claim in the amount of $78,406.62 shall be objected to as these taxes are post-petition and shall be paid in the ordinary course.  The pre-petition portion of the claim shall be paid over a period ending not later than five (5) years after the date of the order for relief (which is 45 months after the projected Effective Date) in an amount of $2,408.61 per month in conformance with 11 U.S.C. 1129(a)(9)(c).. This claim is unimpaired.

5.    **Class Five (Martin County Tax Collector Secured Claim):** The Debtor has filed an objection to this claim in the amount of $278,103.36 (Claim #29) for real property taxes as the owner of the property is not the Debtor, but a separate entity known as NAG Properties, LLC.  NAG Properties is owned by the Debtor's principal, Gary Hendry. No distribution shall be made to this class under the Plan; however, in the event this Court determines that claim must be made by the Debtor after hearing on the intended objection, the Debtor shall make appropriate accommodations to ensure this claim is paid.  This claim is impaired.

6.    **Class Six (Kubota Credit):** The secured claim of Kubota Credit in the amount of $5,791.81 for KUBOTA Z411KW-48, 17474 (Claim #14) shall continue to be paid pursuant to the terms of the Retail Installment Agreement in the amount of $214.12 per month until paid in full. The claim amount listed in the Proof of Claim has been reduced post-petition since payments have been made.  The claim is unimpaired.

7.    **Class Seven (Toyota Industries Commercial Finance, Inc.):** The Debtor is a party

8

to a Master Lease Agreement with Toyota Industries Commercial Finance, Inc. for the lease of several Toyota Forklifts. The Debtor desires to retain the forklifts bearing serial numbers 77010, 76987 and 69511. The Debtor intends to cure the arrears on these three serial numbers on the Effective Date of the Plan as follows:

| | |
|---|---|
| 76987 | $7,079.43 |
| 77010 | $7,079.43 |
| 69511 | $9,175.22 |

The Debtor will continue to make the monthly payments pursuant to the Master Lease Agreement for these three forklifts only as follows:

| | |
|---|---|
| 76987 | $608.73 |
| 77010 | $608.73 |
| 69511 | $785.82 |

The remaining forklifts under the Master Lease Agreement will be surrendered and the Debtor and Toyota are making accommodations to effectuate this surrender. Toyota Industries Commercial Finance, Inc. did not file a Proof of Claim in this case, but it did file Motion for Relief from Stay. This claim is impaired.

8. **Class Eight (Mercedes-Benz Financial Services, USA, Inc.):** The secured claim of Mercedes-Benz Financial Services USA, Inc. in the amount of $112,774.35 (Claim #27) for two Freightliners VINs Ending 5971 and 5973 shall continue to be paid pursuant to the terms of the Note and Security Agreement in the amount of $3,187.13 per month until paid in full. The claim amount listed in the Proof of Claim has been reduced post-petition since payments have been made. The claim is unimpaired.

9. **Class Nine (Seacoast Bank, N.A.):** The secured claim of Seacoast Bank, N.A. in the amount of $15,062.76 as of the Petition Date (Claim #21) for 2017 Ford Transit Van VIN ending 3210 shall continue to be paid pursuant to the terms of the Note and Security Agreement as well as

the Agreed Order Granting Debtor's Motion to Pay Adequate Protection to Seacoast National Bank [ECF #90]. The monthly payment is $696.56 and shall be paid on the 1st of each month until paid in full. This claim may have been reduced during the pendency of the case as a result of post-petition payments being made. This claim is unimpaired.

10.    **Class Ten (Seacoast Bank, N.A.):** The secured claim of Seacoast Bank, N.A. in the amount of $38,474.98 (Claim #24) for 2018 Dodge RAM 5500 CAB VIN ending 0861 shall continue to be paid pursuant to the terms of the Note and Security Agreement as well as the Agreed Order Granting Debtor's Motion to Pay Adequate Protection to Seacoast National Bank [ECF #79]. The monthly payment is $1,249.90 and shall be paid on the 1st of each month until paid in full. This claim may have been reduced during the pendency of the case as a result of post-petition payments being made.    This claim is unimpaired.

11.    **Class Eleven (United Leasing & Finance):** The Debtor and United Leasing are party to an Equipment Lease Agreement dated June 1, 2016 and an amendment thereto dated December 19, 2016 (#0001).  As of the filing of this Amended Plan, there exists are arrears of $168,951.67, which figure represents the entire remaining balance of the Lease.  The remaining terms of the lease remain unchanged.  The Debtor shall pay this claim of United Leasing over twelve (12) months at $14,079.31 per month.  The Debtor shall be authorized to sell collateral to pay down this claim upon approval by United Leasing & Finance.  This claim is impaired.

12.    **Class Twelve (General Unsecured Claims):** The General Unsecured claims include all other allowed claims of Unsecured Creditors of the Debtor, subject to any Objections that are filed and sustained by the Court. The general unsecured claims prior to the filing of any objections total the amount of $3,777,233.26, which will be paid over the five (5) year term of the Plan at the

10

rate of $26,000.00 per month on a pro-rata basis. The payments will commence on the Effective Date of the Plan. The dividend to this class of creditors is subject to change upon the determination of objections to claims. To the extent that the Debtor is successful or unsuccessful in any or all of the proposed Objections, then the dividend and distribution to each individual creditor will be adjusted accordingly. These claims are impaired.

     13.    **Class Thirteen (Equity):** There shall be no distribution to the equity holders of the Debtors under the confirmed Plan and no dividends to this class of claimants. The equity shareholders shall retain their currently held equity interest in the Debtors. This claim is impaired.

     3.4    Blank Ballot

     Any ballot not filed in accordance with the filing instructions on the Ballot pertaining to this Plan shall not be counted for voting purposes.

## ARTICLE IV – IMPAIRMENT

     4.1    According to the above terms of this Plan, Classes 7, 11 and 12 are impaired. Impaired Classes will be treated as fully set forth in Article III above. Unimpaired classes are not entitled to vote for the Plan.

## ARTICLE V - EXECUTION OF THE PLAN

     5.1    The creditors will be paid from the current and the projected future income received of the Debtor. The Debtor submits that there will be sufficient income to make all distributions pursuant to the Plan on the secured claims and provide a reasonable dividend to unsecured creditors, as reflected in the Disclosure Statement and Exhibits attached thereto.

     5.2    Upon the entry of the Confirmation Order, the Debtor shall be vested with all the Debtor in Possessions' rights, title and interests in the assets of **TENTLOGIX, INC.** free and clear, of all claims and interests of Creditors, except as otherwise provided herein. The tax provisions and

11

exemptions of 11 U.S.C., Section 1146 shall apply to all transactions contemplated by this Plan.

5.3     After the entry of Order of Confirmation, the Reorganized Debtor will manage its financial and business affairs without further supervision of the Court.

5.4     The Disbursing Agent for the initial distribution under the Plan shall be the Kelley, Fulton & Kaplan, P.L. from funds assembled for confirmation or otherwise. All subsequent payments shall be made by the Debtor and/or the reorganized Debtor.

5.5     After entry of the Order of Confirmation, the Debtor shall be authorized to sell assets in the order course of its business operations.

## ARTICLE VI - POST-CONFIRMATION REORGANIZED DEBTOR'S STRUCTURE

6.1     The Debtor shall continue to be operated by Gary Hendry, who is the 100% owner of the Debtor.

## ARTICLE VII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Any and all Executory Contracts and unexpired leases of the Debtor not expressly assumed within the Plan, not assumed prior to the Confirmation Date, or as of the Confirmation Date, or the subject of pending applications to assume, shall be deemed rejected. Contracts and Leases will be assumed on the Effective Date.

7.2     Any claim for a rejected contract or lease shall be paid as a General Unsecured Claim by agreement, or upon determination by the Court, to the extent that such claims are allowed.

7.3     The Debtor intends to assume the following leases:

- Toyota Industries Commercial Finance, Inc. (for serial numbers 76987, 77010 and 69511 only).

- NAG Properties for lease of the business premises located at 19100 SW Warfield

Boulevard, Indiantown, Florida 34956.

- United Leasing Equipment Lease Agreement dated June 1, 2016, as amended December 19, 2016 (#0001).

## ARTICLE VIII - MODIFICATION OF THE PLAN

8.1 The Debtor may propose amendments to or modifications of this Plan, and any amendments thereto, at any time prior to confirmation with the leave of Court upon notice to parties entitled to receive the same. After confirmation, the Debtor, may, with approval of the Court, and so long as it does not materially adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies of the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

8.2 The Debtor further reserves the right, at any time after confirmation, to pay down at a faster rate to any different class the sums indicated and set forth in Articles III above, should such monies be available.

## ARTICLE IX - CONFIRMATION REQUEST

9.1 If all of the applicable provisions of 11 U.S.C. Section 1129(a), [other than paragraph (8)], are found to have been met with respect to the Plan, the Debtor seeks confirmation pursuant to 11 U.S.C. Section 1129(a). The Debtor reserves the right, in the event that impaired classes reject the Plan of Reorganization, or any amendments or modifications thereto, to seek confirmation of the Plan pursuant to the "cramdown" provisions of 11 U.S.C. Section 1129(b), if the Court finds at a hearing on confirmation that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class. Furthermore, in order for the Plan to be confirmed, of the ballots or votes cast, Creditors that hold at least 2/3's in amount and more than 1/2 in number of the allowed claims of impaired classes must accept the Plan.

13

## ARTICLE X - EFFECT OF CONFIRMATION

10.1    <u>Discharge</u>:  Except as otherwise provided in this Plan, confirmation of the Plan shall be deemed to have discharged the Debtor, and its professionals, pursuant to Section 1141(d)(1) of the Code from any claim that arose on or prior to the Confirmation Date, and any claim of a kind specified in Section 502(g), (h) or (I) of the Bankruptcy Code whether or not: (i) a proof of the claim is filed or deemed to be filed under Sections 501 and 1111(a) of the Bankruptcy Code; (ii) such claim is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Plan.

10.2    The payments to be made pursuant to this Plan by the Debtor shall be in full settlement and satisfaction of all claims against the Debtor.

## ARTICLE XI - RETENTION OF JURISDICTION

11.1    From and after entry of the Confirmation Order, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the reorganization case to insure that the purpose and intent of this Plan is carried out and for the following purposes: (a) to hear and determine any and all objections to the allowance of any claim; (b) to determine the classification of the claim of any creditor and the reexamination of any claims which have been allowed for the purposes of voting. The failure by the Debtor to object to, or to examine any claims for the purposes of voting, shall not be deemed a waiver of the Debtor's right to object, or reexamine the claim in whole or in part; (c) to hear and determine any and all applications for compensation for and reimbursement of expenses to professionals, as well as to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code, and enforce all Orders entered on such fee applications; (d) to enable the Debtor to prosecute any and all proceedings which may be brought to

14

set aside liens or encumbrances and to recover any transfers, property, or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or any Federal, State or local laws; including causes of action, controversies, disputes and conflicts between the Debtor and any other party including but not limited to any causes of actions for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; and to enter any Order showing that good, sufficient and marketable legal title is conveyed to the purchaser of any of the Debtor's property; (e) to consider any necessary valuation issues under Section 506 of the Code, and any proceeding to determine the amount, validity and priority in connection with the Debtor's property; (f) to determine the rights of any party with respect to the assumption or rejection of any Executory Contracts or Unexpired Leases; (g) to correct any default, cure any omission or reconcile any inconsistency in the Plan or Order of Confirmation, as may be necessary to carry out the purposes and intent of this Plan; (h) to modify this Plan after Confirmation, pursuant to applicable sections of the Code; (i) to enforce and interpret the terms and conditions of this Plan; (j) to enter Orders to enforce the title, rights and power of the estate as the Court may deem necessary; (k) to enter Order concluding and closing this case; (l) to make such Order or give such directions as may be appropriate under Section 1142 of the Code.

## ARTICLE XII- MISCELLANEOUS

12.1    Headings:  Headings are utilized in this Plan for the convenience of reference only and shall not constitute a part of this Plan for any other purpose.

12.2    Defects, Omissions and Amendments:  This Plan may be altered, amended or modified by the Debtor before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

12.3    Governing Law: Except to the extent that the Bankruptcy Code or State Law is

applicable, all rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the Laws of the State of Florida, and venue in the Southern District of Florida, West Palm Beach Division or Palm Beach County.

12.4    Severability: Should any provision of this Plan be determined to be unenforceable, such determination in no way limit or affect the enforceability and the operative effect of any or all other provisions of this Plan.

12.5    Consistency: Should any portion of this Plan or accompanying Disclosure Statement conflict with and portion of the Petition, Schedules, Statement of Financial Affairs, pleadings or correspondence related to this matter, then the terms herein shall prevail and supersede all others.

12.6    Quarterly Trustee Fees; The Debtor is current in the payment of all quarterly fees to the U.S. Trustee to date.  Until the Effective Date of a confirmed plan, the debtor shall continue to file the UST Form 11-MOR, Monthly Operating Report and shall timely pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) (the "Quarterly Fees"). Within two business days of the Effective Date, the reorganized debtor and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. Following the Effective Date of the confirmed plan, the reorganized debtor and any other authorized parties who have been charged with administering the confirmed plan shall file the UST Form 11-PCR, Post-confirmation Report, every calendar quarter and shall timely pay the U.S. Trustee Quarterly Fees until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.

*THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK*

This Plan of Reorganization has been executed this _14ᵗʰ_ day of January 2022.

**TENTLOGIX, INC.**

**DEBTOR IN POSSESSION**

By: _Gary Hendry, PRESIDENT_
       Gary Hendry, President

KELLEY, FULTON & KAPLAN, P.L.
Attorneys for Debtor in Possession
1665 Palm Beach Lakes Blvd.
The Forum - Suite 1000
West Palm Beach, FL 33401
Tel.: (561) 491-1200
Fax: (561) 684-3773

By: _/s/ Craig I. Kelley_
       CRAIG I. KELLEY, ESQUIRE
       Florida Bar No.: 782203

MARY BETH PARKER
MY COMMISSION # GG 350397
EXPIRES: July 23, 2023
Bonded Thru Notary Public Underwriters

1/14/2022